UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 12-283 (PAM/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| 01 - Gordon Lamarr Moore, | |
| 05 - Tierra Samantha Catrina House, | |
| Defendants. | |

Karen B. Schommer, Assistant United States Attorney, for Plaintiff.
James R. Behrenbrinker for Defendant Moore.
Jeffrey C. DeGree for Defendant House.

**THIS MATTER** came before the undersigned United States Magistrate Judge on December 19, 2012 on Defendants' motions to suppress (ECF Nos. 56, 61, & 81). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. The government called three witnesses at the hearing: Postal Inspector Barry Bouchie, IRS Special Agent Kelly Petricka, and retired West St. Paul Police Officer Thomas Steffen. Defendant House called one witness, Tony Williams. The government entered seven exhibits into evidence.[1] For the reasons that follow, the Court recommends Defendants' motions be **GRANTED in part and DENIED in part**.

---

[1] Government exhibit 1 is a search warrant and application for 1998 tan Cadillac Seville, license # 207 GHA; government exhibit 2 is a search warrant and application for White Ford Explorer, license # 140 GX; government exhibit 3 is a search warrant and application for 9240 University Ave. NW #103, Coon Rapids, MN; government exhibit 4 is a search warrant and application for 904 34th Ave. N., Minneapolis, MN; government exhibit 5 is a search warrant and application for 8260 Henslowe Ave. S., Cottage Grove, MN; government exhibit 6 is a search warrant and application for 2001 Gray Chevrolet Tahoe, license # SCN 646; and government exhibit 7 is a search warrant, application, and return for 4895 Ashley Lane #234, Cottage Grove, MN.

## I. FINDINGS OF FACT

### A. An October 14, 2011 interview with Defendant Tierra Samantha Catrina House.

On October 14, 2011, IRS Special Agent Kelly Petricka and Postal Inspector Barry Bouchie went to Defendant House's apartment to interview her regarding counterfeit checks associated with bank accounts at the Postal Credit Union. Defendant House was an employee of the Postal Credit Union, and Petricka and Bouchie believed that she may have information that would aid them in their investigation. House's fiancé, Tony Williams, answered the door and informed the investigators that House was at school. Williams then called House on the telephone, informed her that the police wanted to speak with her, and handed the phone to Petricka. House and Petricka agreed to meet at the school–a location of House's choosing–and that Williams would show them how to get there. Williams drove his vehicle to the school, and the two investigators followed him in their car–an unmarked Chevrolet Trailblazer.

When Williams, Petricka, and Bouchie arrived at the school, House was already outside awaiting their arrival. At some point prior to House's interview with the investigators, Williams asked them whether House was under arrest. The investigators told him and House that she was not under arrest and that they only wanted to talk about her work at the Postal Credit Union. The investigators then invited her to get in the backseat of their Trailblazer. She agreed. The investigators, who were sitting in the front of the vehicle, identified themselves as law enforcement, displayed their credentials, and then told her they were investigating bank fraud. The investigators did not issue a *Miranda* warning, but Petricka told her she was free to go if she didn't want to talk. Petricka testified that the rear passenger doors were not locked from the inside and that House could have opened the door and left the vehicle at any point during the conversation, which lasted about

2

ten minutes. At the conclusion of the conversation, the investigators gave her a letter informing her that she was the target of a grand jury investigation. House then exited the Trailblazer and walked away.

Tony Williams, House's finance, testified that Petricka and Bouchie never identified themselves as police officers when he answered the door to House's apartment. He did, however, infer that they were police officers, and he told House that the police were looking to speak with her when he handed them the phone. Williams also testified that he felt Petricka and Bouchie pressured House to meet with them and that when he arrived at the school, he never exited his vehicle. The conversation between the investigators and Williams (as to whether House was under arrest) occurred while Williams was in his vehicle.

**B.    Recorded telephone conversations**

Postal Inspector Barry Bouchie testified that during the course of this investigation, he monitored telephone conversations involving five different people. All five people consented to the monitoring, and no promises or threats were made to obtain their consent.

**C.    The "Lucky" investigation and the application for a search warrant for 4895 Ashley Lane #234, Inver Grove Heights, Minnesota.**

Between 2008 and 2009, Thomas Steffen, who at that time worked for the West St. Paul Police Department, began investigating a series of thefts involving stolen purses, wallets, and checkbooks. Steffen came to believe that an individual named John Curtis Clark was responsible for the thefts.[2] Steffen interviewed Clark at the jail, and Clark confessed. He said he would keep

---

[2] While responding to a domestic disturbance between Clark and his wife, the police found in Clark's possession identification cards that belonged to the victims of the thefts Steffen had been investigating.

the debit cards for himself and then sell the other items to a guy named "Lucky." Lucky used the stolen items to create counterfeit identification cards and checks. Clark told Steffen that Lucky was a black male and that he lived on the second floor of an apartment complex on Ashley Lane, near the Best Buy, in Inver Grove Heights.[3] Clark, however, did not know Lucky's real name nor did he know Lucky's exact address or apartment number.

Using the information provided by Clark, Steffen determined that Lucky lived at the apartment complex at or near 4895 Ashley Lane, Inver Grove Heights, Minnesota. Steffen testified that the apartment complex he had identified was a large one–with eight separate buildings and as many as sixty apartments in each building. In order to determine which apartment belonged to Lucky, Steffen asked a fellow officer to send a squad car to the apartment complex in the middle of the night to look for a black Yukon in the parking lot. The officer checked and found only one black Yukon, bearing license plate number VXX 017.

Steffen then contacted the rental management of the apartment complex. The rental manager told Steffen that the black Yukon belonged to Gordon Lamarr Moore and that Moore lived in apartment # 234 at 4895 Ashley Lane. At some point before he applied for the search warrant, Steffen ran the license plates for the Yukon and discovered that the vehicle was registered to someone other than Moore, someone whose name Steffen could not pronounce.

On the basis of this information, Steffen applied for a search warrant for 4895 Ashley Lane, apartment #234. The affidavit in support of the search warrant reads as follows:

---

[3] Clark was also able to provide Steffen with turn-by-turn instructions on how to get to Lucky's apartment.

> Your affiant, Thomas Steffen, has been a police officer for the City of W St Paul for more than twenty years and has conducted numerous search warrants in which evidence has been obtained and used in successful prosecutions.
>
> In March 2009 John Curtis Clark 19630213 was arrested for commiting numerous thefts from person. Clark, during an interview, said he usually sold the wallets he stole to someone named "Lucky". Clark said Lucky would take these wallets and using items he found in the wallets, would make identification bearing the wallet owners names. Clark said Lucky lives in an apartment complex, on the second floor, on Ashley Ln in Inver Grove Hts, near Best Buy. Clark said Lucky drove a new looking, black Yukon.
> Only one black Yukon was found parked in the apartment complex. The license plate on this vehicle was VXX017. Through investigation, and another interview with Clark, "Lucky" was identified as Gordon Lamarr Moore 19711010, living at 4895 Ashley Ln #234, and the owner of the black Yukon. .
>
> Based on the foregoing information, your affiant requests authorization to search the residence, surrounding curtilage and the entire premises thereof, to include attached/detached garages and/or storage buildings, at 4895 Ashley Ln #234 Inver Grove Hts MN.

Gov.'s Ex. 7 at 1.

Steffen executed the search warrant and found evidence related to his theft investigation in Moore's apartment. He also found an identification card in Moore's name but with a different address.

## II. CONCLUSIONS OF LAW

### A. Defendant House's motion to suppress should be denied.

Defendant House moves to suppress any statements she made while sitting in the back of Special Agent Petricka's Trailblazer on October 14, 2011. Defendant House contends that she was in custody and therefore the investigators were required to give a warning pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966). A suspect is in custody for *Miranda* purposes if "a reasonable person in h[er] position would consider h[er] freedom of movement restricted to the degree associated with formal arrest." *United States v. Muhlenbruch*, 634 F.3d 987, 995-96 (8th Cir. 2011). House was not in custody when she made the statements. The doors to the investigators' Trailblazer were unlocked, and the investigators informed House she was not under arrest and was free to leave. When the conversation concluded, House opened the doors to the Trailblazer and walked away. Because House was not in custody, no *Miranda* warning was required. Defendant House's motion

5

to suppress should be denied.

      **B.**      **Defendant Moore's motion to suppress electronic surveillance should be denied.**

Defendant Moore moves to suppress any electronic surveillance on the grounds that the communications were unlawfully intercepted or obtained. It is "well settled that a defendant's Fourth Amendment rights are not violated when the defendant's conversations with a government informant are electronically monitored by a government agent with the consent of the informant." *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974). Because each conversation was recorded with the consent of at least one of the participants, no Fourth Amendment violation occurred. Defendant Moore's motion to suppress electronic surveillance should be denied.

      **C.**      **Defendant Moore's motion to suppress any evidence seized pursuant to the search warrant for 4895 Ashley Lane #234 should be granted.**

Defendant Moore moves to suppress any evidence seized pursuant to the search warrant for 4895 Ashley Lane because he contends that (1) the affiant, Steffen, knowingly or recklessly made false statements in his supporting affidavit and (2) after redacting those false statements–as required by *Franks v. Delaware*, 438 U.S. 154 (1978)–the affidavit's remaining content is insufficient to establish probable cause.[4]

To succeed on a challenge to the validity of a search warrant under *Franks v. Delaware*, a defendant must establish by a preponderance of the evidence that the affiant made a false statement

---

[4] The government contends, as an initial matter, that Defendant Moore has not met his burden of establishing that he had a legitimate expectation of privacy in the apartment so as to give him standing to challenge the search. *See generally United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994) (discussing the factors a court looks at in determining whether standing exists for the purposes of the Fourth Amendment). The Court concludes that Defendant Moore has met his burden of establishing standing: the affidavit in support of the search warrant states that Defendant Moore "liv[es] at 4895 Ashley Lane #234."

knowingly and intentionally or with reckless disregard for the truth. *Franks*, 438 U.S. at 155. An affiant acts with reckless disregard for the truth if he "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995). If the defendant shows that the affiant made a false statement knowingly and intentionally or with reckless disregard for the truth, then the Court "must set to one side" the false material and consider whether the remaining content is sufficient to establish probable cause. *Id*. at 156. If the remaining content is insufficient to establish probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.*

      **1.**      **The false statements**.

Steffen made three false statements in the search warrant affidavit: (1) that Clark identified Lucky as Gordon Lamarr Moore, (2) that Clark identified Moore's address as 4895 Ashley Lane #234, and (3) that Moore owned the black Yukon with license plate number VXX 017. At the suppression hearing, Steffen testified that Clark never provided him with Lucky's name or his exact address. He also testified that he ran the black Yukon's license plates and discovered that the vehicle belonged to someone else, someone whose name he could not pronounce, before applying for the search warrant. Steffen "must have entertained serious doubts as to the truth" of these false statements because he personally interviewed Clark and personally ran the black Yukon's license plates before applying for the warrant. *Clapp*, 46 F.3d at 801 n.6. The Court concludes that he made these false statements with reckless disregard for the truth–a conclusion further supported by the fact that Steffen failed to mention in the supporting affidavit that he knew the black Yukon was registered to someone other than Moore.

7

## 2. The remaining content of the supporting affidavit.

Having concluded that Steffen knowingly made false statements in the warrant affidavit, the Court must redact those statements and consider whether the remaining content is sufficient to establish probable cause. *Franks*, 438 U.S. at 155. The redacted affidavit reads as follows:

> In March 2009 John Curtis Clark 19630213 was arrested for commiting numerous thefts from person. Clark, during an interview, said he usually sold the wallets he stole to someone named "Lucky". Clark said Lucky would take these wallets and using items he found in the wallets, would make identification bearing the wallet owners names. Clark said Lucky lives in an apartment complex, on the second floor, on Ashley Ln in Inver Grove Hts, near Best Buy. Clark said Lucky drove a new looking, black Yukon.
> Only one black Yukon was found parked in the apartment complex. The license plate on this vehicle was VXX017. Through investigation, ▮▮▮▮▮▮▮▮▮▮ "Lucky" was identified as Gordon Lamarr Moore 19711010, living at 4895 Ashley Ln #234, ▮▮▮▮▮▮▮▮▮▮
>
> Based on the foregoing information, your affiant requests authorization to search the residence, surrounding curtilage and the entire premises thereof, to include attached/detached garages and/or storage buildings, at 4895 Ashley Ln #234 Inver Grove Hts MN.

Gov.'s Ex. 7 at 1.

The remaining content does not establish probable cause to believe that evidence of a crime would be found at 4895 Ashley Lane #234 because it does not specify how Steffen determined that Lucky lived in apartment # 234. It only establishes probable cause to believe that evidence of a crime would be found in a second-floor apartment somewhere on Ashley Lane. In other words, there are no facts upon which an issuing judge could conclude that it was more probable than not that this particular apartment, apartment # 234 at 4895 Ashley Lane, would contain evidence of a crime.[5] Although Steffen offered testimony at the suppression hearing as to how he determined that Lucky lived in apartment # 234, the relevant inquiry is whether the information presented to the issuing judge was sufficient to establish probable cause. *United States v. Ozar,* 50 F.3d 1440, 1445 (8th Cir. 1995) ("It was error for the magistrate judge [applying *Franks*] to use bank records that

---

[5] Probable cause would exist if Clark had given Steffen Lucky's exact address, but Steffen testified that Clark didn't know Lucky's address.

were not submitted to the issuing court as a basis for second guessing that court's probable cause determination."). The record is silent as to whether Steffen provided those additional facts to the issuing judge. Because the remaining content of the affidavit is insufficient to establish probable cause to believe evidence of a crime would be found 4895 Ashley Lane #234, any evidence seized pursuant to the search warrant, and any fruits thereof, must be suppressed.[6]

### III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, it is **HEREBY RECOMMENDED** that:

1. Defendant House's motion to suppress statements (ECF No. 81) be **DENIED**;

2. Defendant Moore's motion to suppress evidence derived from electronic surveillance (ECF No. 56) be **DENIED**; and

3. Defendant Moore's motion to suppress evidence obtained in violation of the Fourth Amendment (ECF No. 61) be **GRANTED** to the extent it seeks suppression of any evidence seized pursuant to the search warrant for 4895 Ashley Lane #234 and any fruits thereof. In all other respects, the motion should be **DENIED**.

DATED: January 9, 2013                              *s/ Franklin L. Noel*
                                                    FRANKLIN L. NOEL
                                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 23, 2013**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to

---

[6] Although the government contends that the affidavit is saved by the good-faith exception to the exclusionary rule, the Supreme Court expressly excluded *Franks v. Delaware* from the ambit of *United States v. Leon*, 468 U.S. 897 (1984). *Leon*, 468 U.S. at 922 ("Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew or would have known was false except for his reckless disregard for the truth.") (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).

3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 23, 2013,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.